UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HYUNDAI MERCHANT MARINE CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:15-CV-3576-G |
| CONGLOBAL INDUSTRIES, LLC f/k/a CONGLOBAL INDUSTRIES, INC., ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, ConGlobal Industries, LLC

("CGI"), to dismiss the plaintiff Hyundai Merchant Marine Co., Ltd. ("HMM")'s

complaint, or in the alternative, to compel arbitration of this dispute and to stay the

case pending arbitration (docket entry 34). For the reasons set forth below, CGI's

motion to dismiss is denied, and CGI's motion to compel arbitration is also denied.

### I. BACKGROUND

#### A. Factual Background

On May 1, 2009, HMM and CGI entered into a Container Yard and Depot

Agreement. Container Yard and Depot Agreement between HMM and CGI ("the

agreement"), *attached as* Exhibit A to the Appendix to Defendant CGI's Motion to Dismiss Complaint or to Compel Arbitration ("CGI's Appendix") at App. 5 (docket entry 36). Under the agreement, CGI was to provide certain services at its facilities to HMM, including "[c]ontinuous [m]onitoring, and recording daily the temperature of each refrigerated container," and "check[ing] the setting temperature against the actual temperature of Equipment." *Id.* at App. 5-6.

The agreement requires CGI to "indemnify, defend and hold [HMM] harmless against losses, damages, expenses, claims or liabilities by reason of . . . damage to property of third persons . . ., or on account of claims, demands or suits made or brought against [HMM] by . . . any other third person . . . arising out of or in connection with the [s]ervices performed or agreed to be performed by [CGI], whether based upon or resulting from negligence, omission, fault, breach of statutory duty or obligation on part of [CGI], or its agents, servants, subcontractors, employees or otherwise." *Id.* at App. 12.

A dispute arose between the parties when, according to HMM, its cargo was exposed to elevated temperatures and damaged while in CGI's custody. *See* Plaintiff's Original Complaint ("Complaint") ¶ 23 (docket entry 1). HMM asserted claims against CGI for breach of implied warranty, negligence, and "duty of indemnity." *Id.* ¶¶ 32, 35, 39.

The agreement between the parties contains the following provision:

> 14.  Governing Law and Venue
> This Agreement shall be interpreted under and shall be
> governed by the laws of State of Texas [sic].  Any dispute
> between the parties hereto shall be resolved by arbitration
> and litigation in Dallas County, Texas, U.S.A., to which
> jurisdiction the parties hereby voluntarily consent.

Agreement ¶ 14, CGI's Appendix at App. 14.

According to CGI, this is a mandatory arbitration clause and HMM's claims are within the scope of the arbitration clause. *See* Defendant's Motion to Dismiss Complaint or to Compel Arbitration ("Motion") at 2 (docket entry 34).  CGI further contends that dismissal of this case is appropriate because each of the disputed claims are arbitrable. *Id.*  In response to CGI's claims, HMM maintains that none of CGI's arguments are applicable because the "Governing Law and Venue" clause is not a mandatory arbitration clause. *See* Plaintiff's Response to Motion to Dismiss ("Response") at 2 (docket entry 49).  Rather, HMM contends, the clause is a choice of law and forum selection clause. *Id.*

## B.  Procedural Background

In April 2015, HMM filed this suit against CGI in the District of South Carolina. *See* Complaint.  In its complaint, HMM asserted claims for breach of implied warranty, negligence, and "duty of indemnity." *Id.* at ¶¶ 32, 35, 39.  In November 2015, Judge David C. Norton of the District of South Carolina transferred the case to this court.  Order to Transfer at 1 (docket entry 27).  In November 2015, CGI filed the instant motion to dismiss the complaint, or alternatively to compel

arbitration and to stay the case. *See* Motion at 1. HMM filed a timely response, Response at 6, to which CGI served a timely reply. Defendant's Reply in Support of Motion to Dismiss at 11 (docket entry 50). The motion is now ripe for consideration.

## II. ANALYSIS

### A. Applicable Law

In considering whether a dispute is subject to binding arbitration, the court must determine whether there is a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration agreement. *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). In general, this determination is made "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act.'" *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983)).

Federal law strongly favors arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); see also *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (the FAA "declared a national policy favoring arbitration . . . .") (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 10 (1984)); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Accordingly, the Federal Arbitration Act, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Therefore, if this court finds that HMM agreed to arbitrate the claims it asserts in this case, arbitration must be ordered.

While there is a strong federal policy favoring arbitration, the court does not yield to this policy when making the initial threshold determination about the existence of an agreement to arbitrate. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (internal citations omitted); *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003). However, once an arbitration clause's validity has been established, the court must observe the strong federal policy favoring arbitration and resolve all ambiguities in favor of arbitration. *Primerica Life Insurance Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-prong inquiry. *OPE International LP v. Chet*

*Morrison Contractors, Incorporated*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam).

First, the court must determine "whether the parties agreed to arbitrate their

dispute." *Id.* Two considerations guide the court in making this determination:

(1) whether a valid agreement to arbitrate exists between the parties; and (2) if the

court finds that the parties agreed to arbitrate, whether the dispute in question is

within the scope of the arbitration agreement. *Id.*

Under the second prong, the court must ensure that no legal constraints

external to the agreement have foreclosed arbitration of the disputed claims. *Id.* at

446. All doubts concerning the scope of an arbitration clause should be resolved in

favor of arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation

Company*, 363 U.S. 574, 583 (1960). If the court finds that this two-prong inquiry is

satisfied, arbitration must be ordered. *Mitsubishi Motors*, 473 U.S. at 628.

Here, the court's analysis need only reach the first prong.

B. Application

1. *Whether the Parties Agreed to Arbitrate*

The primary dispute between the parties is whether the agreement contains a

clause requiring arbitration of HMM's claims. Any dispute over the validity of an

agreement to arbitrate is analyzed under the general principles of contract law. *First

Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "[A]rbitration is a

matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (quoting *Warrior & Gulf Navigation Company*, 363 U.S. at 582).

Making this determination is a matter of contract interpretation which is to be performed by the court rather than an arbitrator. *AT & T Technologies, Inc.*, 475 U.S. at 649 (it is the court's duty to interpret agreement and determine whether parties intended to arbitrate); see also *Warrior & Gulf Navigation Company*, 363 U.S. at 582-83. The court must not consider the merits of the underlying dispute when conducting its analysis. *Primerica Life Insurance Co.*, 304 F.3d at 471.

CGI asserts its motion to compel arbitration based on Paragraph 14 ("the provision") of the agreement titled "Governing Law and Venue." The provision, in relevant part, requires "[a]ny dispute between the parties hereto shall be resolved by *arbitration and litigation* in Dallas County, Texas, U.S.A., to which jurisdiction the parties hereby voluntarily consent." Agreement ¶ 14, CGI's Appendix at App. 14 (emphasis added). CGI contends that this clause explicitly requires arbitration of any disputes between the parties. HMM, on the other hand, maintains that the provision is not a mandatory arbitration clause but a choice of law and forum selection clause.

Despite the strong policy favoring arbitration, it is doubtful whether the provision is sufficient to constitute an arbitration agreement. Unlike arbitration clauses routinely upheld by the courts, the provision does not prefer arbitration of

any disputes between the parties over a remedy in a court of law.  It provides for the application of Texas state law (choice of law) through "arbitration and litigation" in Dallas County, Texas, U.S.A.

The Fifth Circuit has previously held that "[when] the very existence of any agreement [to arbitrate] is disputed, it is for the courts to decide at the outset whether an agreement was reached."  See *Will-Drill*, 352 F.3d at 218.  In explaining its holding, the Fifth Circuit noted that, "where the very existence of an agreement [to arbitrate] is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed.  Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue."  *Id.* at 219 (emphasis in original).

Due to its inclusiveness of both "arbitration and litigation," the provision cannot reasonably be interpreted as expressing a clear and unambiguous intent of the parties to submit to binding arbitration, as CGI insists.  *See* Defendant's Reply in Support of Motion to Dismiss at 3-4 (docket entry 50).  In the agreement, the operative language "arbitration and litigation" effectively vitiates any requirement of arbitration in lieu of litigation.  CGI deemphasizes this point in its filings by bolding the word "arbitration" and selectively redacting "litigation" when quoting "arbitration and litigation" from the provision.  *See, e.g.*, Defendant's Memorandum of Law in

Support of Motion to Dismiss Complaint or to Compel Arbitration ("Memorandum")
at 7 (docket entry 35).

This court poses the same rhetorical question the Fifth Circuit asked in
*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir.
2001). "How then, we ask rhetorically, can this provision be deemed a binding
agreement to arbitrate any and all disputes (which precludes by its very terms any
court resolution) when it identifies ['litigation'] and 'arbitration' as equals in that very
provision?" *Id.* at 463. CGI appears to ask this court to reform the agreement so that
the inclusive "arbitration and litigation" language requires arbitration *over* litigation.
The court declines this invitation.

The provision's inclusive construction places arbitration and litigation on equal
footing. While the provision specifies a geographic location for any disputes that
arise under the agreement, there is no selection of an arbitral forum or organization
such as the American Arbitration Association with its procedural and substantive
rules, and significantly, no language mandating arbitration over litigation. *Id.* These
omissions serve as an invitation to, rather than avoidance of, litigation. Despite the
court's inclination to encourage parties to resolve their differences in arbitration
rather than in a court of law, the provision leaves little to support CGI's contention
that the clause, standing alone, is an agreement between the parties for binding
arbitration. Because the court has determined that the agreement does not contain a

mandatory arbitration clause, the court need not consider whether there are any external legal constraints on arbitration.

### 2.  *Motion to Dismiss*

In its initial motion before this court, CGI moved to dismiss HMM's complaint without identifying a procedural basis for dismissal.  Memorandum at 7-8. Since the court concludes that the agreement does not contain a mandatory arbitration clause, CGI's motion to dismiss is denied.

### III.  CONCLUSION

CGI has not met its burden to show an express agreement requiring arbitration.  Therefore, CGI's motion to dismiss is **DENIED**, and CGI's motion to compel arbitration is also **DENIED**.

**SO ORDERED**.

February 22, 2016.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**